Good morning, your honors. May it please the court. I'm Alex Brown and Michael Bullock here on behalf of the Erie Appellants. And I would begin by noting there are eight material errors in the trial court's decision. The first is that the trial court applied the wrong decision in dismissing this case, the wrong standard. She applied the injunction standard, manifestly pointless standard, instead of the standard applicable to abstention. So she dismissed the case based on abstention, but applied the injunction standard, not the abstention standard in doing so. That in and of itself is reversible error. The second error that we point out in our brief is that even if the standard were manifestly pointless, the only evidence in front of the court at the time of dismissal was submitted by Erie. We submitted an unrefuted affidavit of the Phase I, Phase II structure, whereby the administration opened a market conduct examination of Erie under Phase I, and that was ongoing, and opened a licensing Phase II investigation, which was stayed. And we have an affidavit saying that that case, we were told, was stayed in 2001, 2002, and 2003. That's unrefuted. Secondly, we have the two letters the administration wrote to the NAACP. The first letter was written in October of 22 by Commissioner Brain, and when she notes that the complainants had met with the MIA, were complaining that the investigation had dragged on for years, and then the NAACP came in when no action was taken. And the commissioner was essentially, and I'm paraphrasing, calming them down, saying we can't reveal the information in our confidential Phase I market conduct examination, but you can sue the Erie defendants, our licensee. The commissioner issued us a license to sell insurance in Maryland and recommended that the complainants sue us in civil court, which they did. And then when those suits were dismissed, the NAACP came back to the administration and said, well, the suits were dismissed. We need you to do something. And Mr. Dorsey wrote a letter to the NAACP saying it's our obligation to comply with the statutes that say everything in the market conduct exam is confidential until the end, and there are very good reasons for that, which I'll get into. He refused to reveal anything in the market conduct examinations. And I note that's well after the 2007 amendment to 2209. In fact, that's 16 years after the amendment to 2209, where Mr. Dorsey is saying everything, the source documents and everything in the market conduct is confidential. And then just two months later, the determination letters are issued. They don't quote a single word from the documents in the licensing examination, but they quote extensively and exclusively from the market conduct materials that were trade secret, attorney-client privileged, confidential. And almost immediately, the governor, the NAACP, and the complainants issue press releases. Now, there is certainly, to finish my point on error number two, it certainly would not be manifestly pointless to conduct discovery on that factual record to see if there was bias here. I would note that the third error was to find that the third middle sex factor was satisfied. And the third middle sex factor is whether if you do not send this back to the trial court and we have to go to the insurance administration to litigate, whether we'll have an adequate opportunity to litigate. There are two reasons why we will not have an adequate opportunity to litigate. The first is the air EVAC case. This is in extraordinary circumstances, which I know, Judge Gregory, you didn't write, but you were on the panel in that case. You noted that the timeline was problematic for the West Virginia insurance commissioner in that case. The timeline is far more problematic for the Maryland insurance commissioner. Aren't you leaving out something super important about air EVAC, which is that that case is all about the abuse of discretion standard and saying the district court did not abuse its discretion. I read air EVAC as a case about standards of review, and in that case the district court didn't do the thing, and in this case the district court did do the thing. Why is that not a big deal? It's not a big deal because it's not dicta when the court says the timeline was problematic. In the context of explaining why the district court didn't abuse its discretion, not as a freestanding statement of what we think. Okay, but it is the only close statement that this court has given on what you think in terms of bias. Okay, so I just checked again. I'm sort of stunned. Are you familiar with the Supreme Court's decision in Kugler v. Helfand from 1975? I am, yes. Why aren't the allegations of bias in this case very analogous to the allegations of bias in that case, and in that case the Supreme Court abstained based on Rule 12b-6? This is a case in which the allegation is that the Chief Justice of New Jersey has called the trial judge in for a little chat with the accused judge. I don't understand how the allegations... I mean, I understand you have allegations of bias, but the allegations of bias in Kugler are crazy, and the Supreme Court said that's not a basis for abstaining. And so I don't know how these can be a basis for abstaining. Well, I don't think they are a basis for abstaining. Sorry, sorry, for not abstaining. You understand. I do. Those aren't... Sorry, let me get a little phrase. Those allegations weren't the basis for interrupting the normal thing that if you have a problem with how something's going to happen in the New Jersey courts, raise it in the New Jersey courts, and then raise it in a cert petition after the fact. Well, I think Kugler is completely distinguishable from this case for the reason that the trial court missed, which is if you proceed at the Insurance Administration, just proceeding is going to commit additional violations of 2209. We cannot proceed... But isn't that speculative? No. What if counsel says that they agree with your argument, that these are confidential and we're not going to use them? Then we still can't proceed in front of the Insurance Administration because the source materials will necessarily need to be made a part of the record at the Insurance Administration because state government article 10-213A2 says that the administration's entire licensing investigation file, including now the source materials, which it shouldn't include, has to be made part of the record. And the administration knows that that's wrong, which is why they've come up with this concocted scheme to try to avoid the state government article violation to say, well, instead of transferring it to the hearing officer, the file, the source materials, which have never been released, what we're going to do is we're going to send them to counsel. And we're going to violate state government article 10-213A2, which says the insurance commissioner shall transfer the licensing division file to the hearing officer, which contains the source materials, which we produced under a different bargain than we got from the Insurance Administration. The trial judge was simply wrong in saying, number one, she said, well, the determination letters are already public, so there's no harm in transferring them to the hearing officer. But the source materials have never been made public. Our attorney-client privilege, trade secret, all of those materials have never been published, just excerpts of them in the determination letters. And so we're in a position, we're in an impossible position if we have to proceed before the MIA. Because here's what we need to do. To defend against a determination letter that quotes our source market conduct materials that are confidential, we have to make one of two decisions. We have to say we're going to stand on the confidentiality and not defend ourselves and appeal, take that up on an appeal after we lose, or we are going to waive our trade secret, confidential attorney-client privilege and deal with those source market conduct materials in the hearing on the determination letters. Both of those violate our due process rights, because when we turned over those source materials, we had an agreement. And the agreement was the insurance commissioner needs to regulate insurance companies. Why does the first of those violate due process, saying, okay, so another way to describe that is you've been told that if you want to proceed, you have to proceed under a procedure that you claim violates your rights. Maybe it does, maybe it doesn't, because no one's adjudicated that, but you claim it violates your rights. And you say if you want to stand on that, you have to basically litigate, lose, and then appeal. I mean, that happens like literally all the time in litigation. Well, but the Supreme Court in Gibson said I don't have to do that. Because what the Supreme Court in Gibson said is, if I do not have an, and let me flip to it, that, bear with me, Your Honor, that the Supreme Court in Gibson said that. Well, look, I'm just thinking of an example that would happen literally all the time in federal district court. I'm asked for something in discovery. I refuse to turn it over because I claim I don't have to for some reason. The district court says I have to turn it over. I think the district court's dead wrong about that. I now have to make a decision about whether to turn it over. And, like, that happens in litigation constantly, and we don't say that's a violation of your, like, that's maybe the district court was wrong, but that's not a violation of your due process rights. Right, but the district court isn't the one who took those documents from me under false pretenses. The administration took those documents from me under Chinwuba, Maggie, having said twice in letters just before, these are confidential while the market conduct is ongoing. And we submitted an unrefuted affidavit that the market conduct exam is still ongoing. So the party that took them from me is now going to disclose them and break the benefit of the bargain that I got. That's a violation of due process. That's what the Supreme Court said in Gibson. Wait, wait. Gibson is a case about pecuniary interest. How is this a case about pecuniary interest? It's not. It's not. Gibson says define. Hold on. It is in fact a case about, you may claim that it has language that goes beyond pecuniary, but that is in fact a case about pecuniary interest. That's correct, Your Honor. It is a case about pecuniary interest. But it defines bias more broadly than that. It says the possible temptation to an average man, which means political bias can be a bias as well. I'm just trying to think through the implications of your position that alleging the fact that state regulators might have a political incentive to do something is enough to get around younger abstention. The mind sort of reels at the possibility of how broad younger abstention could be. I mean, I think I could take as a judicial notice of the fact that you can make plausible allegations of political bias against state administrators like literally all the time. Not literally all the time because you don't have... They work for the governor and the governor appoints them and the governor can fire them. This is a really important contributor. But this is completely different because this is way stronger than that. This is a situation where you had an investigation switch for no reason because the determination letters that were issued in the licensing examination, which was stayed, could have been issued in the market conduct exam. And if they had been issued in the market conduct exam, they would have been confidential. So there was literally zero reason to switch from the confidential market conduct exam to the public determination letters other than political bias. There's no reason. Because if they just wanted to regulate Erie and say you've discriminated, you're bad, we're going to fine you, they could issue a confidential order in the market conduct exam. They would have to issue us a draft letter. We would give them comments confidentially. If we couldn't agree, we would have a confidential hearing. And what they did was they didn't do it in the market conduct exam because that wouldn't get the NAACP off their back and it wouldn't appease the governor, both of whom wanted to make public statements. So what they did was they dumped it into a stayed investigation for publicity reasons. There's no other reason to have done that. So this is, in fact, an extraordinary circumstance where it's not like a case where you lose on a document issue. It's a case where the only reason the commissioner could have done what they did was political bias. With respect to, and that's why what you have is the administration backing up here and saying because we've noted that what they've done is inconsistent with decades of what they've done before and inconsistent with the bargain we struck, they're backing up and trying to say, well, there's a new rule that came out in 2007. Ignore what we said in 2002 and 2003. De Novo Review will not fix this because, again, if this hearing proceeds, our source market conduct materials go from investigators where they're still subject to the 2209 protections. Under the 2209 protections, they're privileged and confidential. No public information act request can get them. They cannot be subpoenaed in civil court, and they have a number of ‑‑ there can be no testimony about them. The minute our source market conduct materials are transferred to the hearing officer, they're stripped of the 2209 protections, and they become public, and the licensees can get them, and you can get them through a public information act. That's a bill that cannot be unwronged. That's why we need the federal court's help in this case because we cannot fix it on appeal because even if we win on appeal, our source market conduct materials will have been released for the first time in the MIA hearing, and that's why the MIA has said we'll give them to counsel. We won't give them to the hearing officer, which is what the state government article requires because we recognize you're right about that, and I'll yield the balance of my time for rebuttal. Thank you, Your Honor. Thank you, Mr. Brown. Mr. Dorsey? May it please the court, Van Lear Dorsey, on behalf of the American Insurance Administration and the commissioner Kathleen Burrain. This court should affirm the judgment of the district court and find that it did not abuse its discretion in abstaining based both on the younger and birthright abstentions documents. This court should also find no error by the district court in dismissing the case and denying the motion for injunctive relief without a hearing. May I ask you as a former civ pro teacher something that I don't understand? So the only motion before the district court was a motion for a PI, am I right? Correct. On what basis did the district court dismiss? So in addition to the motion for injunctive relief that was filed by Erie, the MIA also filed a brief with regard to abstention. Did you file a document called motion to dismiss? We filed a response. And that's a no? You did not file a document called motion to dismiss? We did not file a motion to dismiss, but in the brief that we filed, we asked that the court abstain based on abstention doctrine. And the court has the authority to raise the issue on its own if it chooses to. In an oral telephonic meeting between the parties, the court said, I want both parties to address the abstention doctrine, which the parties did. So it was fully in front of the court and they were prepared and the court was therefore ready to rule on it. And the court found, despite what Erie has said here, that there were no material disputes with regard to abstention. And that's the important thing. How can you find that without having an evidentiary hearing? You can find it based on the rules and statutes that apply to the hearing that's going to be held at the MIA. And you can also base that on the evidence that was presented by Erie, You can consider evidence in ruling on a motion to dismiss. Again, this part strikes me as extraordinarily irregular from a basic CIVPRO matter. If it's a motion to dismiss, you can't consider evidence. And once we consider evidence, it's not a motion to dismiss. So I don't really know what this proceeding is. But with regard to the argument as to whether or not there was bias or not, the only thing that they have that they rest their head on are the two letters to the NAACP. And if you look at those letters, all they say is that we are proceeding within So we are considering these letters in a motion to dismiss context? I really don't. I'm not messing with you. I really don't understand. Is this these letters are incorporated into the complaint so you can consider them under Rule 12b-6? Or what are we doing here? Is this summary judgment? What is this? The letters were submitted by Erie as part of their motion for injunctive relief. Not attached to their complaint? Not attached to their complaint. Great. So it was in response to the motion for injunctive relief as well as the briefing provided by the parties with regard to abstention. So that was the only... Those letters, all they say essentially is the MIA is investigating the case and the goal is to try to come to the right decision. The only way you can find bias based on that is some sort of speculation and innuendo which goes far beyond the briefs, far beyond the complaint. And that is what the court found. And that was within the discretion... I'm going to take a page from the Appellee's in the Aravac case and say the district court got it correct and in any event it was well within the discretion of the court to rule that... See, this is my other problem. I understand in Aravac the district court, as I recall, grants a PI. Am I right? The district court in that case granted a PI? That is correct. And so in the course of deciding to grant the PI, the court had to decide whether to abstain because if I'm going to abstain, I can't grant a PI. So it makes total sense that that's reviewed for abuse of discretion. But if this is some sort of effective motion to dismiss hearing, I don't know how you get abuse of discretion review in a decision that is... So let me take a step back. It seems to me that pragmatically what the district court did here is in the course of denying the PI, converted this also into a 12b6 motion to dismiss based on abstention, which no one's objecting to, so I guess you can do that. But once you do that, I don't understand how there's abuse of discretion review because we don't defer to district courts when they grant motions to dismiss. So even if... I believe that the abuse of discretion is correct. Both parties here have agreed... Give me one context in which we apply abuse of discretion in reviewing a motion to dismiss. So it has been applied in other cases where the parties have raised a bias in an abstention doctrine. If you look, for example, at the Supreme Court in the Dayton Christian case, there was an allegation of bias based on the fact that the decider in that case was also part of the ethics commission in that case. And the Supreme Court had no issue with that. If you look at... It's a district court case, but if you look... Okay, how about Kugler then, which, again, I don't understand why it wasn't cited in any of the briefs. In that case, the Supreme Court treated it as de novo 12b-6, right? That's correct. That's correct, but again, they found that there was no error... No, sure, sure, sure. There may well be no error, but the Supreme Court in Kugler says, if it's being done in a 12b-6, we have to renew it de novo under the sort of standard rules. They said that, right? Correct. Okay. Can I ask you a question about... So your friend on the other side says... I mean, you heard what he said. His allegation is essentially to the effect of, they pointed out that these things are going to have to be disclosed, and then you say, well, no, they don't. Do you have anything to support your claim that what you're proposing to do here is the standard method? Because when I looked at your brief, you didn't cite anything for the proposition that what you're saying is going to happen is the standard method. So... All I can point to are the rules that apply. And, you know, they've cited to 10-213 of the state government article and say that you are compelled to submit the entire investigative file in the case. That's not what the statute says. That's not what it says at all. What it says is that if there's evidence that you wish, and these are the words of the actual statute, if there is evidence that you wish to be made part of the record, you have to submit that. And the reason there's a Part A and a Part B in that, and the reason there's a Part B is because the state agencies are not always parties to these proceedings. In many cases, in many cases, the MIA will issue a determination where there's no violation. In those circumstances, the complainant has a right to request a hearing. And so in those circumstances, the MIA may, even though it's not a party, submit portions of the record to the file. So when you ask, you know, what's the evidence that I'm relying on, the evidence that we're relying on is the second letter, the corrected letter. There was a letter that granted the hearing. And that had the usual boilerplate language that is used when the complainant requests a hearing, that we're going to submit the record, the evidence, and you can object to it. They haven't raised the fact that it did specifically say you're allowed to object to the documents. The second letter, however, points out what that is. So that is the factual evidence that supports that. So, you know, they're wrong with regard to what 10-213 says. They're wrong with regard to, you know, the fact that, you know, just because the hearing officer gets it doesn't mean that all their rights go away. That's just not what happens. I mean, because they have a right to move to exclude the evidence. They have a right to file for a protective order. They have a right to file, you know, a motion to have the evidence sealed so that only the parties can see it. Now, they're going to say, well, that means the complainants can see the evidence. And it's important to note that the complainants are not, as a matter of course, parties to the case. And that is because it's an MIA action, you know, and it's an MIA order. The parties have a right to seek to join the case, but they're not necessarily a party. But again, that's why they can file a motion for a protective order. You know, and this is not the first and only case where the MIA has, in fact, had confidential documents before it. Frankly, it happens all the time. A typical case in the property and casualty world will involve underwriting guidelines. Underwriting guidelines of an insurer by statute are considered confidential. Nonetheless, with regard to the issue of, you know, whether or not an insurer failed to pay a claim in an arbitrary and capricious manner, that's Section 27-303, you necessarily have to look at what the underwriting guidelines are. I'm mixing my cases. I'm sorry. The underwriting guidelines apply with regard to Section 27-501, which is, you know, the denial of an applicant. And so, you know, you have to look at what the underwriting guidelines are in that case, and they have to be made part of the record. In those cases, and this has been litigated previously, in those cases, what happens is that the insurer is made aware that the MIA intends to make those confidential records part of the record, and they're given an opportunity to object. And that would include a motion for protective order. So, you know, with regard to the mental sex factors, you know, they absolutely are given an adequate opportunity to raise their constitutional challenges, which here are procedural and substantive due process claims. And in fact, they do have, you know, the right to protect their information. You know, they've raised, you know, in addition to the two letters that I've discussed, you know, it's important to remember that extraordinary circumstances, by the definition, are supposed to be extraordinary. And, you know, and the avenue for finding that it's extraordinary circumstances is an exceedingly narrow path. And that's not the path that they're on in here. That's certainly not what the district court found. You know, the district court was presented with the information and concluded that there were no extraordinary circumstances. And this court should not overturn that. Unless there are any further questions, I will sit down. Yes, Mr. Dorsey. Mr. Brown says on behalf of his client that because there was a responding to the NAACP, I think I want to quote him, try to paraphrase, he said that he can't think of any other reason other than bias was your motive. Do you want to respond to that? You know, I don't know how you can assume that bias would apply. There are many reasons why the MIA did what it did, not the least of which is that there were significant violations in this case by the insurer that were found by the MIA. And so it was important to go ahead and issue the orders. And that was the determination of the associate commissioner who issued the determination letters, well within, you know, the appropriate motive. Now, with regard to the use of the documents that were obtained in the market conduct examination, it's important to note that's specifically what the statute says that can be done. It specifically says in 2-209G3 that the documents can be used for any regulatory action by the MIA. And that's the distinction between the Chinluba and the Nagy case that they rely on. Those cases have nothing to do with the use of the documents in a regulatory action by the MIA itself. And that's all that's happening here. And, you know, I am very concerned should ERI prevail in this case that it will have a chilling effect on with regard to how the MIA operates. And I'll give you an example of this. And it's a theoretical example. But let's say the MIA is doing a market conduct examination of a health insurer. And in the course of that examination, finds that a claim in one particular case is being denied to someone for something that is medically necessary and they need it on an emergency basis. Under ERI's theory of this case, the MIA would be precluded from using those documents and proceeding with an order against the insurer to correct that medical determination in that case. Rather, they say you have to continue with the market conduct process until it concludes. Fortunately, there's nothing in the statute that requires that and there's no reason why you should proceed in that regard. I ask that, again, that you affirm the district court's ruling and thank you for your time. Thank you. Mr. Brown, you have some time reserved. Yes. Thank you, Your Honor. And I'm just going to hit a few points very quickly. But I'll start, Judge Gregory, with the question you asked that I don't think Mr. Dorsey quite answered. I told you that if the administration could have issued the exact same relief it issued in the public determination letters against ERI in a private market conduct order, and then we would have had a private fight over whether there were violations. And you asked him, well, why did you do it publicly instead of privately? And in essence, his answer was because there were a lot of violations. You haven't gotten an answer because there is no good answer. The only reason to issue the same violations in a public forum instead of a private forum is because of political pressure. Now, I'd like to go to Judge Hayden's question about, is this the standard method? And Mr. Dorsey talked about the two letters that were issued. He answered your question by talking about the first standard letter. The first standard letter says, hey, we're going to transfer the file over to the hearing officer. That's what the standard practice is. So that answers your question. They had to issue a special unique letter in this case to say, well, we're going to come up with a unique situation here. And Mr. Dorsey says I can file a motion for protective order. That doesn't do me any good, and I'll explain why. Because I've requested a hearing on determination letters that quote source market conduct materials. So let's say you deny my appeal. I go back to the MIA. I file a motion for protective order. The source market conduct materials cannot be used in the MIA case. I win my protective order. Then I can't use the source market conduct materials to say the MIA has, and I'm using hypotheticals here, misquoted the source market conduct materials. Hey, there's something else in the source market conduct materials that refutes what the MIA said. I've handcuffed myself by winning a protective order, not allowing the source market conduct materials to be used. That's my point. It's impossible to proceed in a situation on an appeal of a document that quotes market conduct materials that should never have been released. They will never be released, even after the final report is issued in the market conduct exam. Because we get the draft market conduct report, we get to object, and then we get to fight it out, as Chinwuba said, without the MIA taking an entrenched position, which they've done here in the public determination letters, and that's why they're trying to walk all of this back. Mr. Brown, I guess the question I have here is that you've well stated why you disagree with what they did and how they did it and when they did it, and you've, I think, stated, well, in your view, it's sort of somewhat unorthodox, not taking this route. But can you point to any regulatory provision that prohibits the state from doing the way they did it? Not that you disagree with it. What did they violate? Oh, you had to do this sequence. Yes, you have been, I mean, this is conceived for the purpose of your argument, you have been disadvantaged from a litigation standpoint. But can you tell me what exactly, what regulatory violation occurred by the way they did it? Yes. All right. Section 2209G, and I get into an analysis of this in my briefs, and Mr. Dorsey just misquoted it to you. He says that the amendment in 2007 said that the administration can use market conduct materials for any regulatory action. I made a note of writing it down and quoting it. That's not what it says. What the statute really says is they can use market conduct materials to further any regulatory action. And what surrounds that is, before the notice to further it, is the documents are privileged. They can't be requested in a PIA request. They can't be subpoenaed. And then behind that, what it says is a short statutory list of three entities the administration can give these documents to. It's law enforcement, other regulators, and the National Association of Insurance Commissioners, but only if all three of those sign a confidentiality agreement. So to answer your question, what Mr. Dorsey is telling you is these documents, when they're produced in the market conduct exam, can only be released to law enforcement regulators and the NAIC, but the MIA can just decide to publish them. So all of those statutes limiting what they can do with these things are irrelevant because the MIA can just decide to dump them into a public exam and publish them willy-nilly without us under 2209 having the right to challenge the draft report or have a confidential hearing. So it doesn't expressly say you're not allowed to do this, but read in the context of the statute, which is what this court respectfully is required to do, the conclusion I think you're required to read if you read the statute as a whole is that the MIA cannot say we're entitled to your confidential business information in the market conduct and we need it, but if we decide to publish it we can just publish it to the public. There's a statutory list. They can give it to three entities, regulators, law enforcement, and NAIC. What he's telling you is we can add a fourth entity to that short statutory list, the general public, and that's not the case. What we've been robbed of is our opportunity when we produced it in the market conduct exam to challenge the final report and through a confidential hearing, and here's the chilling effect I'm worried about. My client, Chinwuba, talks about free communication between insurers and the insurance administration because you do, to be regulated, have to give your confidential trade secrets and business information. If we lose this case, insurance companies are not going to give anything to the administration under a market conduct exam because what they're going to say is you can strip me of all these protections just by dumping it into a public licensing exam and issuing determination letters. I'm not giving you my secret sauce for anything. And Mr. Dorsey said I can move to have this evidence excluded. If I do, it's in the public record. There is a statute in 2209 which says that documents given to regulators as part of an investigation are privileged and confidential, but it doesn't say there is no statute anywhere that says documents given to a hearing officer are privileged and confidential. I still just don't understand why you're saying a protective order would not protect you. It seems like you're saying, well, I wouldn't be able to make these arguments, but why would you want to make those if it's confidential information? You want to put it in the record? You don't want to put it in the record? I'm a little confused about that. Here's what I want to do. I want to put that information in the confidential record in the proceeding I produced it in, which is the market conduct exam, where there's a whole confidential proceeding where I can produce my source materials and we can fight it out in private and my competitors and the complainants can't get it. And it was set up, that's what Chinwuba explains, is that so you can have free communication is the quote from the case before the MIA takes a public and transposition like issuing May 2023 letters saying ERIE is discriminating before it's been litigated. And so what I want is to produce these source market conduct materials in the market conduct exam, which I did, and litigate it out in confidence, which I did, and have the opportunity for a back and forth about whether there were violations or whether there are not, which is the procedure in 2209. What I don't want, and what you're getting at I think is the right conclusion, it's impossible to do this in public, which is the whole reason 2209 exists, and says if you're willing to give us your secret sauce that you don't want competitors or the general public to see, give it to us. We won't let the public ask for it. We'll give you private rights to fight it out in private. We may use it to further a regulatory purpose. If they wanted to do this, let me tell you what they should have done and what 2209G says they could have done. If they saw something concerning in our source market conduct materials, they could have given it to the licensing division and had them sign a confidentiality agreement or agree to honor the 2209 protections, which is what is required, and then the licensing division would know, okay, hi, we've got these source conduct materials that are problematic. Then they can request those market conduct materials from us in the licensing investigation, and our response would be different because what we would, in the market conduct, we said, sure, here, take it all. It's confidential. In the licensing investigation, when we get that request, we're going to object, and we're going to say we're not giving that to you because it's confidential, it's trade secrets, and Mr. Dorsey's client would say, no, you have to give it to us, and then we can fight that out. But we have an opportunity to have the fight. That's my point. We had no due process here. We gave it under one process where we have an opportunity to fight it out confidentially, and then they stripped us of that by publishing it, and now it's out, and I can't. I either have to make the choice, and I'll finish with this. The question you ask is a good one, and I'm glad you asked it because now I have to make a choice, now that they've gone around 2209, which is the authority for why they can't do this, 2209 G, F, and H. Now I have a choice. I can move to keep all that stuff out of the hearing, and then I can't use it to defend myself. Or I can waive trade secret, attorney-client privilege, work product confidentiality, and use it in the public forum, and I don't have any due process here because they've taken that away from me. And the complainants will be parties to that case. They've already submitted a Public Information Act request for all of this, and they are allowed to be, by statute, parties to the case if they have a financial interest affected in the case. And one of the issues in our appeal is, do we have to reimburse these agencies thousands of dollars in commissions? So they absolutely have a financial interest, and I know I'm saying this on the record. If they move to get in, they're in. So even if I file a motion for protective order and win, a motion to seal and win, the complainants will see it. But it's nothing wrong with, I'm asking the question, but the state can go forward with a licensing investigation, correct? Correct, and they could ask us for those same materials in the licensing investigation if the market conduct had used them to further the licensing investigation, which is what the statute says, and they can request it in the public forum, and we would say, this is a public forum, our response is different. So your response is that, in other words, you could have stonewalled them? Well, we wouldn't have stonewalled them. Aren't you saying you could have stonewalled them? I'm not saying stonewalled them. We would have raised objections to producing it. That's kind of what stonewalling is. I think if you have legitimate, we would only raise legitimate objections. I didn't say it wasn't legitimate. You can stonewall legitimately, but it's stonewalling. In other words, we're not going to give it to you. There's a gauntlet right here. And we would also know, if we raised objections and we lost, and they got those materials in the public, then they're fair game. They may issue them in a public order whenever they want, but then we're all playing by the same rules and we're following the statutes more important. That's all the more reason why perhaps it should be abstention, because this is within the regulatory scheme for federalism in terms of this, right, the whole idea that states run their own regulatory, because there's an interest in making sure that what's alleged, at least I say it this way, the complaints being investigated in the licensing, those are significant issues for any state, correct? In other words, the subject of what's being investigated, the allegations, right, to be investigated in the licensing. They're important to the state to get to the nub of it to see whether that's true or not. I agree with you, and it's also important to follow the statutes as you're doing that. And so let me just respectfully disagree with you on this point. It's incumbent on the state, as the requester of the information, to follow the statutes. They have the power. We don't. We made a bargain with them. We'll provide you this stuff because it's confidential, and we're relying on Chinwuba and Nagy, your statements and your letters to the NAACP, and your past history. And they changed the deal after we produced the arguments. And let me just say this. The only place in the world where we can litigate our due process objections and not have the source conduct materials be stripped of their 2209 protections is federal court. Because the minute we go to the MIA to raise our due process objections, our 2209 protections are stripped of the market conduct materials. We can't protect them anymore because we need them to defend ourselves or we have to waive our ability to defend ourselves. The only place in the world we can defend the due process issues that the MIA created by switching this on us is in the federal court. Let me ask you a hypothetical. Let's say there was no market conduct study at all, and it started with a licensing investigation. Sure. Would you say your only way to protect yourself there is to come to the federal court? No. Because you're running out through the state regulatory process, right? Right. Which may end up with your materials that are going to be given to the public. There's some aspect of your response to that. Right, but we would know that before we gave them to the MIA. The rules wouldn't change in the middle of the game. And the rules haven't changed. The MIA has just bowed to political pressure. Like, they violated the rules. But the problem is that I don't think you, 209, it helps you in that process of the market conduct study, but I don't think you can cite anything that said they cannot have a dual track parallel investigation, both at the same time. They can. They can, right? They can. I mean, they chose not to because they said it was state and it wasn't. But they can do a dual track, but they have to request the documents in that public forum. That's the whole reason there's a private forum. Because if I know what I produce to you is going to be on the public record, I'm going to respond differently. And Chinwuba said that's good. And that makes sense. The Chinwuba court, which was a Maryland appellate court, said, we need you to communicate freely. So we're going to protect your communications in that market conduct process. And we relied on that. And that's appropriate. And it's the regulator, the insurance commissioner, who stripped us of that. And the only place where we can force them to comply with the statutes and the bargain we struck when we communicated with them freely is in the federal court. So you think the federal court can enjoin the state from saying, you cannot investigate this licensing at all? Do you think we have that force of the court? No. What I think you can do is you can say you violated state law by switching these to a public investigation, and so they need to be withdrawn, which is what we've asked for in our complaint. So in other words, again, we could force them to shut it down. And do it the right way. And follow the statutes and do it the right way. Yes, you absolutely can, which is what you did in AIREVAC. That's what you personally did. All right. Thank you so much for your arguments. Thank you. We're going to come down to Greek Council and take a brief recess. Honorable Court will take a brief recess.
judges: Roger L. Gregory, Toby J. Heytens, DeAndrea Gist Benjamin